UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. APH01000606, APH02000606, APH03000606, APH04000606 and APH05000606,<br>　　　Plaintiff<br><br>v.<br><br>TIMOTHY G. HAYDOCK, BARBARA MOSS, MARGARET REICHENBACH, and JOHN REICHENBACH,<br>　　　Defendants | C.A. No. 1:25-CV-10662 |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME the Plaintiffs, Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. APH01000606, APH02000606, APH03000606, APH04000606 and APH05000606 ("Underwriters"), and allege the following:

## INTRODUCTION

Underwriters seek a declaration, pursuant to 28 U.S.C. §2201, that their policies of insurance, issued to the Defendant, Timothy G. Haydock, do not afford coverage for the judgments entered against Dr. Haydock and the Defendant, Barbara Moss in Bristol Superior Court, Civil Action No. 1573CV00938 ("the Underlying Action"), and that Underwriters therefore have no obligation to defend or indemnify Dr. Haydock or Ms. Moss with respect to the Underlying Action or any appeals entered in connection therewith.

Underwriters further seek a declaration, pursuant to 28 U.S.C. §§2201 and 2202, that that the Defendants, Margaret and John Reichenbach (collectively, "the Reichenbachs"), have no rights

307699437v.1

to reach-and-apply the proceeds of Underwriters' insurance policies with respect to the judgments entered against Dr. Haydock and/or Ms. Moss in the Underlying Action.

## PARTIES

1.      Underwriters are business entities organized and existing under the laws of Great Britain and Wales, with a principal place of business in London, United Kingdom, and qualified to transact business in the Commonwealth of Massachusetts.

2.      Dr. Haydock is an individual residing at 28 Mattarest Lane, South Dartmouth, Bristol County, Massachusetts.

3.      Ms. Moss is an individual residing at 28 Matterest Lane, South Dartmouth, Bristol County, Massachusetts.

4.      Mrs. Reichenbach is an individual residing at 29 Mattarest Lane, South Dartmouth, Bristol County, Massachusetts. Mrs. Reichenbach is a judgment creditor of Dr. Haydock and Ms. Moss.

5.      Mr. Reichenbach is an individual residing at 29 Mattrest Lane, South Dartmouth, Bristol County, Massachusetts. Mr. Reichenbach is a judgment creditor of Dr. Haydock and Ms. Moss.

## JURISDICTION AND VENUE

6.      There is complete diversity of citizenship between Underwriters and the Defendants, and the amount in controversy as to each Defendant exceeds $75,000, exclusive of interest and costs. This Honorable Court therefore has subject-matter jurisdiction under 28 U.S.C. §1332(a)(1).

7.      The Defendants reside in the District of Massachusetts.

2

307699437v.1

8.      The events giving rise to the matters in dispute in this action occurred in the District of Massachusetts.

## FACTS

### THE UNDERLYING ACTION

9.      On or about October 1, 2015, the Reichenbachs filed the Underlying Action, naming Dr. Haydock and Ms. Moss as defendants. See Complaint, a true and accurate copy of which is attached hereto as Exhibit 1.

10.     In the Underlying Action, the Reichenbachs asserted three counts against Dr. Haydock and Ms. Moss: Count I, which alleged violations of the Massachusetts Civil Rights Act; Count II, which alleged Trespass; and Count III, which alleged tortious interference with contractual relationships.

11.     The Reichenbachs specifically alleged that over a period of several years beginning in 2011, Dr. Haydock and Ms. Moss engaged in a series of actions aimed at preventing them from building a home on the property at 29 Mattarest Lane, South Dartmouth, Massachusetts, including, but not limited to, making frivolous requests to the Massachusetts Department of Environmental Protection, filing objections with the Dartmouth Conservation Commission, delaying the Federal Emergency Management Agency's issuance of necessary documents, and interfering with contractors hired by them to perform work on the property.

12.     The Reichenbachs further alleged that Dr. Haydock and Ms. Moss trespassed on their property on several occasions.

13.     The Underlying Action was tried to a jury in early-2023. On March 3, 2023, the jury returned a verdict in favor of the Reichenbachs, and against Dr. Haydock and Ms. Moss, on all counts. See Verdict Form, a true and accurate copy of which is attached hereto as Exhibit 2.

307699437v.1

14.     The jury awarded $500,000 in damages on Count I – Violation of the Massachusetts Civil Rights Act against Dr. Haydock.

15.     The jury awarded $1,000,000 in damages on Count I – Violation of the Massachusetts Civil Rights Act against Ms. Moss.

16.     The jury awarded $50,000 in damages on Count II – Trespass against Dr. Haydock.

17.     The jury awarded $150,000 in damages on Count II – Trespass against Ms. Moss.

18.     The jury awarded $1,000,000 in damages on Count III – Intentional Interference with Contractual Relations against Dr. Haydock.

19.     The jury awarded $1,000,000 in damages on Count III - Intentional Interference with Contractual Relations against Ms. Moss.

20.     Also on March 3, 2023, the jury returned Special Interrogatories. See Special Interrogatories to the Jury, a true and accurate copy of which is attached hereto as Exhibit 3.

21.     The jury found that none of the damages awarded for Counts I or II were attributable to conduct by Dr. Haydock between November 25, 2010 and November 26, 2012. See Ex. 3, Nos. 1-2.

22.     The jury found that all of the damages awarded for Count II were based on the emotional distress of the Reichenbachs. See Ex. 3, Nos. 3-8.

23.     On May 3, 2024, the Superior Court entered judgment against Dr. Haydock, including damages in the amount of $1,550,000, prejudgment interest of $1,599,713.15, $395.00 in statutory fees, and $2,383,816.99 in attorneys' fees and expenses. The total judgment was for $5,533,924.24. See Judgment on Jury Verdict, a true and accurate copy of which is attached hereto as Exhibit 4.

4

307699437v.1

24.     On May 3, 2024, the Superior Court entered judgment against Ms. Moss, including damages in the amount of $2,150,00, prejudgment interest of $2,218,956.95, $395.00 in statutory fees, and $2,383,816.09 in attorneys' fees and expenses. The total judgment was for $5,533,924.24. See Judgment on Jury Verdict, a true and accurate copy of which is attached hereto as Exhibit 5.

UNDERWRITERS' POLICIES

25.     Underwriters issued a series of policies ("the Underwriters policies") to Dr. Haydock, including Policy Nos. APH01000606 (in effect from November 26, 2007 through November 26, 2008) ("the 2007 Policy"), APH04000606 (in effect from November 26, 2008 through November 26, 2009) ("the 2008 Policy"), APH04000606 (in effect from November 26, 2009 through November 26, 2010) ("the 2009 Policy"), APH0400060 (in effect from November 26, 2010 through November 26, 2011) ("the 2010 Policy"), and Policy No. APH05000606, in effect from November 26, 2011 through November 26, 2012 ("the 2011 Policy").

26.     All of the Underwriters policies provided the following with regard to Personal Liability coverage:

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.  Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured", and

2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

307699437v.1

27.    All of the Underwriters policies provided the following exclusion applicable to

Personal Liability coverage:

### E. Coverage E – Personal Liability And Coverage F – Medical Payments to Others

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Excution E.1. does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property.

28.    All of the Underwriters policies included the following definitions:

### DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.  "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:
. . .

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in the care of any person named above;

**b.** A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

**(2)** 21 and in your care or the care of a person described in a.(1) above; or

**c.** Under Section II:

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in a. or b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person included in a. or b. above; or

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

. . .

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

29.    Only the 2010 Policy and the 2011 Policy provided the following with regard to

Personal Injury coverage:

7

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

The following is added to Coverage **E** – Personal Liability:

**Personal Injury Coverage**
If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

30.    Both the 2010 Policy and the 2011 Policy provided the following exclusion applicable to Personal Injury coverage:

This insurance does not apply to:

1. "Personal Injury":

   a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";

   b. Arising out of oral or written publication of material, if done by or at the direction of an "insured" with knowledge of its falsity; …

31.    Both the 2010 Policy and the 2011 Policy provided the following additional definition applicable to Personal Injury coverage:

**DEFINITIONS**

The following definition is added:

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

1. False arrest, detention or imprisonment;

307699437v.1

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5.  Oral or written publication of material that violates a person's right of privacy.

32.    Upon being notified of the claims being made against Haydock, Underwriters agreed to provide him with a defense, subject to a full reservation of rights.

33.    Underwriters have been providing Haydock with a defense in the Underlying Action.

34.    The damages awarded by the jury in the Underlying Action are not damages because of "bodily injury" as defined by any of the Underwriters policies.

35.    The damages awarded by the jury in the Underlying Action are not damages because of "property damage" as defined by any of the Underwriters policies.

36.    The damages awarded by the jury in the Underlying Action are not damages caused by an "occurrence" as defined by any of the Underwriters policies.

37.    The damages awarded by the jury for Count I in the Underlying Action are not damages for injury occurring during the period of the 2010 Policy.

38.    The damages awarded by the jury for Count II in the Underlying Action are not damages for injury occurring during the period of the 2010 Policy.

39.    The damages awarded by the jury for Count I in the Underlying Action are not damages for injury occurring during the period of the 2011 Policy.

40.    The damages awarded by the jury for Count II in the Underlying Action are not damages for injury occurring during the period of the 2011 Policy.

307699437v.1

41.     The damages awarded by the jury for Count I in the Underlying Action are not damages based on any injury arising out of an offense committed during the period of the 2010 Policy.

42.     The damages awarded by the jury for Count I in the Underlying Action are not damages based on any injury arising out of an offense committed during the period of the 2011 Policy.

43.     The damages awarded by the jury for Count II in the Underlying Action are not damages based on any injury arising out of an offense committed during the period of the 2010 Policy.

44.     The damages awarded by the jury for Count II in the Underlying Action are not damages based on any injury arising out of an offense committed during the period of the 2011 Policy.

45.     The damages awarded by the jury against Haydock in the Underlying Action are for injury which was expected or intended by Haydock.

46.     The damages awarded by the jury against Moss in the Underlying Action are for injury which was expected or intended by Moss.

47.     The damages awarded by the jury in the Underlying Action are for injury which was caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury."

48.     The damages awarded by the jury in the Underlying Action are for injury which arise out of oral or written publication of material by or at the direction of an insured with knowledge of its falsity.

10

49.    At no time during the periods of the 2010 Policy or 2011 Policy was Moss the spouse of Haydock.

50.    At no time during the periods of the 2010 Policy or 2011 Policy was Moss related to Haydock by blood, marriage, or adoption.

51.    At no time during the periods of the 2010 Policy or 2011 Policy did Moss qualify as an "insured" under the 2010 Policy or the 2011 Policy.

## COUNT I
### DECLARATORY JUDGMENT
### Barbara Moss

52.    Underwriters repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

53.    An actual controversy exists between Underwriters and the defendants as to Underwriters' duties to defend and/or indemnify Moss with respect to the Underlying Action under the Underwriters policies.

54.    Pursuant to the terms of the Underwriters policies, Moss is not an "insured."

55.    The claims against Moss are not for "bodily injury" or "property damage" caused by an "occurrence" as defined by the Underwriters policies.

56.    The claims against Moss are not for "personal injury," as defined by the 2010 Policy and 2011 Policy.

57.    The claims against Moss are not for "bodily injury" or "property damage" during the policy period, or for "personal injury" arising out of an offense committed during the policy period, as required by the Underwriters policies.

58.    If the claims against Moss initially trigger coverage under any of the Underwriters policies, they are excluded from coverage by exclusions contained in some or all of such policies.

307699437v.1

59.     Accordingly, Underwriters are not obligated to defend or indemnify Moss with respect to the damages awarded against her in the Underlying Action.

## COUNT II
### DECLARATORY JUDGMENT
**Thomas G. Haydock**

60.     Underwriters repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

61.     An actual controversy exists between Underwriters and the defendants as to Underwriters' duties to defend and/or indemnify Haydock with respect to the Underlying Action under the Underwriters policies.

62.     The claims against Haydock are not for "bodily injury" or "property damage" caused by an "occurrence," nor are they for "personal injury," as defined by the Underwriters policies.

63.     The claims against Haydock are not for "bodily injury" or "property damage" during the policy period, as required by the Underwriters policies.

64.     The claims against Haydock are not for "personal injury" arising out of an offense committed during the policy period, as required by the 2010 Policy and 2011 Policy.

65.     If the claims against Haydock initially trigger coverage under any of the Underwriters policies, they are excluded from coverage by exclusions contained in some or all of such policies.

66.     Accordingly, Underwriters are not obligated to defend or indemnify Haydock with respect to the damages awarded against him in the Underlying Action.

WHEREFORE, Underwriters seek a declaration by this Honorable Court that:

A.    Underwriters have no obligation under Policy No. APH01000606 to defend Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

12

B.   Underwriters have no obligation under Policy No. APH01000606 to indemnify Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

C.   Underwriters have no obligation under Policy No. APH02000606 to defend Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

D.   Underwriters have no obligation under Policy No. APH02000606 to indemnify Barbara Moss in the claims made by the Reichenbachs against her the Underlying Action.

E.   Underwriters have no obligation under Policy No. APH03000606 to defend Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

F.   Underwriters have no obligation under Policy No. APH03000606 to indemnify Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

G.   Underwriters have no obligation under Policy No. APH04000606 to defend Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

H.   Underwriters have no obligation under Policy No. APH04000606 to indemnify Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

I.   Underwriters have no obligation under Policy No. APH05000606 to defend Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

J.   Underwriters have no obligation under Policy No. APH05000606 to indemnify Barbara Moss in the claims made by the Reichenbachs against her in the Underlying Action.

K.   Underwriters have no obligation under Policy No. APH01000606 to defend, and may immediately terminate the defense of Timothy Haydock in the claims made by the Reichenbachs against him the Underlying Action.

L.   Underwriters have no obligation under Policy No. APH01000606 to indemnify Timothy Haydock in the claims made by the Reichenbachs against him the Underlying Action.

M.   Underwriters have no obligation under Policy No. APH02000606 to defend, and may immediately terminate the defense of Timothy Haydock in the claims made by the Reichenbachs against him in the Underlying Action.

N.   Underwriters have no obligation under Policy No. APH02000606 to indemnify Timothy Haydock in the claims made by the Reichenbachs against him the Underlying Action.

O.  Underwriters have no obligation under Policy No. APH03000606 to defend, and may immediately terminate the defense of Timothy Haydock in the claims made by the Reichenbachs against him in the Underlying Action.

P.  Underwriters have no obligation under Policy No. APH03000606 to indemnify Timothy Haydock in the claims made by the Reichenbachs against him the Underlying Action.

Q.  Underwriters have no obligation under Policy No. APH04000606 to defend, and may immediately terminate the defense of Timothy Haydock in the claims made by the Reichenbachs against him in the Underlying Action.

R.  Underwriters have no obligation under Policy No. APH04000606 to indemnify Timothy Haydock in the claims made by the Reichenbachs against him the Underlying Action.

S.  Underwriters have no obligation under Policy No. APH05000606 to defend, and may immediately terminate the defense of Timothy Haydock in the claims made by the Reichenbachs against him in the Underlying Action.

T.  Underwriters have no obligation under Policy No. APH05000606 to indemnify Timothy Haydock in the claims made by the Reichenbachs against him the Underlying Action.

Respectfully submitted,

Plaintiffs,

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. APH01000606, APH02000606, APH03000606, APH04000606, AND APH05000606,

By their attorneys,

/s/ Christopher P. Flanagan
Christopher P. Flanagan, BBO# 567075
Christopher.Flanagan@WilsonElser.com
WILSON ELSER
260 Franklin Street, 14th Floor
Boston, MA 02110-3112
Dated: March 20, 2025          (617) 422-5306

307699437v.1