# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.
SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. 1573CV00938

MARGARET J. REICHENBACH )
and JOHN REICHENBACH )
     Plaintiff )
     )
     )
v )
     )
TIMOTHY G. HAYDOCK )
 and BARBARA MOSS )
    Defendants )

## COMPLAINT

### INTRODUCTION

This Complaint alleges violations of the Massachusetts Civil Rights Act, M.G.L. c. 12, Section
1 II and violations of Articles I, X and XII of the Massachusetts Declaration of Rights, trespass,
and tortious interference with contractual/advantageous relationships. Plaintiffs Margaret J.
Reichenbach and her husband, John Reichenbach, allege that Defendants Timothy G. Haydock
and Barbara Moss have by threats, intimidation and coercion interfered with the Reichenbachs'
right to use, improve and enjoy their land and new home. The Defendants have undertaken a
relentless campaign to hinder and/or delay the Plaintiffs from building a new home on their land.
Defendants have threatened to damage their reputation and finances; trespassed; barred the
Plaintiffs from using the only existing access to their property; attempted to prevent them from
constructing an alternate access; falsely imprisoned Plaintiffs' vendors and contractors; engaged
in abusive conduct and language directed toward contractors and others working at the site;
monitored the Plaintiffs' Property with cameras; interrupted construction by talking at and to
workers; attempted to force the Town of Dartmouth to require Plaintiffs to obtain a soil removal

1

PDF created with pdfFactory trial version www.pdffactory.com

permit which is only required of gravel pits; interfered in the Plaintiffs' FEMA LOMR process; and have commenced and maintained a constant stream of legal challenges which lacked any reasonable factual support and/or any arguable basis in law.

## THE PARTIES

1. The Plaintiffs, Margaret J. Reichenbach and John Reichenbach (the "Reichenbachs"), husband and wife, reside at 256 Highland Street, West Newton, MA 02465. They own a new home which was built for them at 29 Mattarest Lane, South Dartmouth, MA 02748.

2. Defendants Timothy G. Haydock and Barbara Moss reside at 28 Mattarest Lane, South Dartmouth, MA 02748, which property is owned by Defendant Haydock.

3. Defendant Haydock has a partial ownership interest in 30 Mattarest Lane, South Dartmouth, MA 02748 which abuts the Reichenbachs' property at 29 Mattarest Lane. (See, Paragraph 6 below.) At all times material hereto, Defendant Moss has acted in concert with Mr. Haydock.

## FACTUAL BACKGROUND (CHRONOLOGICAL)
### Property Interests

4. Clara Frothingham owned a 17 acre parcel of land on the waterfront in the Nonquitt Community of South Dartmouth, MA. between 1921 and 1976. Nonquitt is located on the shores of Buzzards Bay and the homes in Nonquitt serve mostly as vacation homes. A site plan depicting the 17-acre Frothingham parcel is attached hereto and incorporated herein by reference as Exhibit A. This land was subdivided into eight lots by her Estate in 1979. The various lots were conveyed to members of Clara Frothingham's family (the "Frothingham Family Compound"). The subdivision plan depicting the Frothingham

2

PDF created with pdfFactory trial version www.pdffactory.com

Family Compound is attached hereto and incorporated herein by reference as Exhibit B.

5.    The Reichenbachs purchased the property located at 29 Mattarest Lane, Dartmouth, MA (hereinafter, the "Reichenbach Property") from Sheila S. Frothingham, Surviving Trustee of the Frothingham Family Holding Trust, on September 5, 2008 by deed recorded with the Bristol County (S.D.) Registry of Deeds (the "Registry of Deeds") in Book 9136, Page 224. The Reichenbach Property consists of approximately 1.5 acres fronting on Buzzards Bay and Mattarest Lane.    At the time the Reichenbachs acquired the Reichenbach Property, various improvements, including a home and tennis court, were located on the Property. It has a rocky beach. The Reichenbachs purchased the property with the intention of building a new seasonal home for their family.  Mr. Reichenbach had been living in Nonquitt during the summers since he was a young man. The Reichenbachs own and have lived at property located at 12 Mattarest Lane during the summers and holidays since 2007. The new house was intended to replace the property at 12 Mattarest Lane for their family's seasonal, weekend and holiday use.

6.    Defendant Haydock, owns property located at 28 Mattarest Lane, Dartmouth, MA (the "Haydock Property") which he acquired from William Rotch Frothingham by deed dated June 10, 1991, recorded in the Registry of Deeds in Book 2650, Page 254. The Haydock Property is one of the eight lots in the Frothingham Family Compound created by the subdivision in 1979, as described in Paragraph 4 hereinabove.   Haydock and his companion, Defendant Moss, have resided at the Haydock Property for many years. Until recently, Defendant Haydock worked part time in New Bedford, Massachusetts. Defendant Moss has no recorded legal ownership interest in the Haydock Property. The Haydock Property is near, but not adjacent to, the Reichenbach Property.

7.    Defendant Haydock has a one-sixth ownership interest in the waterfront property located at 30 Mattarest Lane, South Dartmouth, MA (the "Haydock Family Property").  The Haydock Family Property is immediately to the east of the Haydock Property, abuts

3

PDF created with pdfFactory trial version www.pdffactory.com

Buzzards Bay and is immediately to the north of and is adjacent to the Reichenbach Property.   Defendant Moss has no recorded legal ownership interest in the Haydock Family Property. The Haydock Family Property is occasionally used by family members for vacation and is occasionally rented to third parties. It is used almost exclusively during the summer months. A site plan depicting the three properties is attached hereto and incorporated herein by reference as Exhibit C.

8.    On information and belief, although Haydock, as a family member, had at least an oral right of first refusal on the Reichenbach property, he did not exercise it before the Reichenbachs purchased the Reichenbach Property.   Haydock and/or Moss unsuccessfully attempted to prevent Frothingham from selling the Property to the Reichenbachs and urged that the Property be "kept in the family." Haydock has always regarded the Reichenbach Property as part of his "family compound", and part of his backyard.

9.    When the Reichenbach Property was owned by a member of the Frothingham family, family members, including Defendants Haydock and Moss, had permission to use the tennis court and to access the beach on the ocean via a stairway located on the Reichenbach Property. After the Reichenbachs acquired the property from Frothingham, those family members were no longer permitted to freely access the beach via the stairway or to freely use the tennis court once construction commenced. The Defendants still had alternate access to the beach through an easement through the Reichenbach Property and the Haydock Family Property (the "Ocean Access Easement") and also by means of a separate entrance through the Haydock Family Property.

10.    Prior to the Reichenbachs' acquisition, the previous owners of the Reichenbach Property benefitted from an easement to use the driveway passing through the Haydock Family Property to the Reichenbach Property (the "Driveway Easement").   The Driveway Easement was the only access to the Reichenbach Property before the Reichenbachs

4

purchased the property. The Driveway Easement is recorded in the Registry of Deeds in Book 1820, Page 740, and was granted only to William Frothingham and his heirs. A copy of the Driveway Easement is attached hereto and incorporated herein by reference as Exhibit D1. A site plan showing the Driveway Easement is attached hereto and incorporated by reference as Exhibit D2. The Driveway Easement did not, by right, benefit the Reichenbachs as they were not heirs of William Frothingham. In his attempt to block the sale to the Reichenbachs, Defendant Haydock refused to grant a driveway easement to the Reichenbachs when the Reichenbachs were negotiating to purchase the Property.

11.   On or about June 13, 2009, Haydock and the other owners of the Haydock Family Property executed a Grant of (temporary) License, enabling the Reichenbachs to use the driveway on the Haydock Family Property to access the Reichenbach Property. A copy of said Grant of License is attached hereto and incorporated herein by reference as Exhibit E. Said Grant of License was terminable on thirty days' notice, which Haydock terminated on January 25, 2011, when the Reichenbachs obtained a building permit to commence initial preparations to construct their new home, as detailed in Paragraph 24 below.

12.   Shortly after Defendants revoked the License, they attempted to stop the Reichenbachs from building an alternate driveway by requesting an order from the MassDEP preventing its construction. The request was baseless as the property involved was completely out of the areas over which Mass DEP and the Dartmouth Conservation Commission had jurisdiction. Had the Defendants been successful, they would have landlocked the Reichenbach's property. (See, Letter of Luke Legere dated May 11, 2011 together with Petitioner's Motion Requesting an Order Prohibiting Work Approved by the permit under Appeal attached hereto and incorporated herein by reference as Exhibit F. The Decision of Mass DEP denying the requested stop work order dated May 17, 2011 is attached hereto and incorporated herein by reference as Exhibit G.

5

PDF created with pdfFactory trial version www.pdffactory.com

Conservation Commission Hearings. Decisions and Appeals Therefrom

13.  On August 13, 2009, the Reichenbachs filed a Request for Determination of Applicability
under the Wetlands Protection Act (the "Act") and the Dartmouth Wetlands Protection
Bylaw (the "Bylaw") with the Dartmouth Conservation Commission seeking approval of
the delineation of Coastal Bank and the Coastal Floodplain.

14.  The Conservation Commission issued a positive Determination of Applicability
approving the delineations of the Coastal Bank and Coastal Floodplain on September 3,
2009.

15.  Commencing in the summer of 2009, the Reichenbachs discussed their plans and their
future neighbors' questions for several months in great detail and in good faith.

16.  On September 25, 2009, the Reichenbachs filed a Notice of Intent with the Dartmouth
Conservation Commission seeking permission to demolish the existing house on the
Reichenbach Property and to construct a new home, swimming pool, retaining walls, and
associated grading and landscaping.

17.  Several Conservation Commission hearings were held at which Defendants Haydock and
Moss voiced their objections to the Reichenbachs' home building plans. Hearing dates
were postponed in order to evaluate Defendants' objections and to incorporate changes in
the site plan to accommodate neighbors' concerns in the hope of securing the
Defendants' support and the approval of the Conservation Commission. See, Minutes of
the Conservation Committee meetings attached hereto and incorporated hereby by
reference as Exhibit H. These changes included locating the house 15 feet further away
(west) from the water, lowering the retaining walls, lowering the proposed elevation of
the house, and enhanced drainage facilities. The changes were not required by law.

6

PDF created with pdfFactory trial version www.pdffactory.com

18.     Also during that time, the Reichenbachs negotiated with the Defendants for the right to
        continue to use the Driveway Easement. The plan the Reichenbachs submitted as
        consideration would have solved chronic water flow problems impacting the Haydock
        Family Property at substantial engineering and construction costs to the Reichenbachs.
        The plan would also have spared fifteen trees. The Defendants and the Haydock Family
        rejected these plans because they insisted on receiving $180,000 which the Reichenbachs
        were not willing to pay in addition to their solving the Defendants' separate water
        problems and regrading the property.

19.     On April 29, 2010, the Dartmouth Conservation Commission issued an Order of
        Conditions which permitted the construction, *inter alia,* of the Reichenbach house. A
        copy of said Order of Conditions is attached hereto and incorporated herein by reference
        as Exhibit I.   The Defendants opposed the issuance of the Order of Conditions,
        notwithstanding the changes the Reichenbachs made at Defendants' request. The Order
        of Conditions was not appealed to the Massachusetts Department of Environmental
        Protection ("MassDEP") under the Act or to the Superior Court under the local Bylaw.

20.     On October 26, 2010, the Reichenbachs filed an application for an Amended Order of
        Conditions with the Dartmouth Conservation Commission to add an aesthetic curve to the
        retaining wall and other minor changes.

21.     The Conservation Commission held two hearings on the request for Amended Order of
        Conditions between October 26, 2010 and January 11, 2011. Defendants Haydock and
        Moss objected in person and in writing to the changes and repeatedly attempted to raise
        time-barred issues relating to the Coastal Bank adopted in the Original Order of
        Conditions, as was approved in the Determination of Applicability issued by the
        Dartmouth Conservation Commission on September 3, 2009.

7

22.   After a meeting with the Dartmouth Conservation Commission on January 11, 2011, Defendant Moss said to Mrs. Reichenbach that she was going to ruin the Reichenbachs' reputation in the Nonquitt community and cost them an enormous amount of money because "they" (the Defendants) were not going to drop this matter. Defendant Moss repeated this threat to Mr. Reichenbach several times thereafter. Defendant Haydock also threatened Mr. Reichenbach by saying that he was going to plant a row of trees along the border shared by the Reichenbach and Haydock Family Properties which would block the Reichenbachs' water view to the North. The Reichenbach Property had no water view impacts on the Haydock Property or Haydock Family Property. These threats were the Defendants' first direct articulations of their scheme to coerce, intimidate and harass the Reichenbachs to prevent or delay them from building their house and enjoying their property in violation of Massachusetts law.

23.   The Dartmouth Conservation Commission summarily dismissed the Defendants' objections by a unanimous vote. On January 13, 2011, an Amended Order of Conditions was issued by the Dartmouth Conservation Commission.

24.   On January 25, 2011, Paul Murphy, Director of Inspectional Services for the Town of Dartmouth (the "Director of Inspectional Services"), issued a Building Permit to the Reichenbachs to construct a retaining wall around a portion of the Reichenbach land which was needed to prepare the site for construction. A copy of said Building Permit is attached hereto and incorporated herein by reference as Exhibit J.

25.   Also, on January 25, 2011, Samuel Haydock, one of the owners of the Haydock Family Property, the brother of Defendant Haydock and who for a short time served as Defendant Haydock's representative, appealed the issuance of the Amended Order of Conditions to MassDEP on behalf of the Defendants and other residents on the grounds, *inter alia*, that the requested changes would have a detrimental impact on the Coastal Bank (the "First DEP Appeal"). A copy of Samuel Haydock's Request for a Superseding

8

Amended Order of Conditions is attached hereto and incorporated herein by reference as Exhibit K. The Defendants and other residents did not appeal the Amended Order of Conditions under the local Bylaw to the Superior Court.

26.    On January 25, 2011, Attorney John C. Bentley, on behalf Defendant Haydock and the other owners of the Haydock Family Property, sent a letter to Reichenbach revoking the Grant of License to use the driveway located on the Haydock Family Property. Said letter also demanded that the Reichenbachs "surrender all use of the driveway, utility pole, overhead utilities and underground utilities...." A copy of Attorney Bentley's letter is attached hereto and incorporated herein as Exhibit L. A Revocation and Termination of License was recorded with the Registry of Deeds on March 11, 2011 in Book 10013, Page 78. A copy of said Revocation is attached hereto and incorporated herein by reference as Exhibit M.

27.    As a result, Reichenbachs, their family, contractors, subcontractors and vendors had no access to the Reichenbach Property. As a result of the License termination, the Reichenbachs were forced to remove numerous trees and construct a parallel driveway less than 15 feet from the Haydock Family Property driveway to provide access to their Property, at a significant cost which would have otherwise been unnecessary. They were also required to move utilities at additional otherwise unnecessary expense.

28.    On February 23, 2011, the MassDEP conducted an on-site meeting and inspection of the Reichenbach Property as part of the appeal process of the Amended Order of Conditions. At that meeting, Thomas W. Hardman, Reichenbachs' land surveyor, drew the attention of the MassDEP Senior Wetlands Analyst, Richard Keller, P.E., to the fact that the Defendants Haydock and Moss and his siblings had caused the installation of a permanent stair system in the Coastal Bank on the Haydock Family Property and had cleared away a large area of vegetation partly on the Reichenbach Property. After the meeting, Defendant Moss admitted to Mr. Reichenbach that she knew they should not

9

PDF created with pdfFactory trial version www.pdffactory.com

have done it. This was destruction of the very same Coastal Bank the Defendants purported to be protecting in their objections to the Dartmouth Conservation Commission and in the First DEP Appeal.

29.    The Dartmouth Conservation Commission commenced an investigation into the Defendants' destruction of the Coastal Bank. The Conservation Commission determined that excavation of the Coastal Bank had occurred and that a concrete, stone and wooden stair system was installed in the Coastal Bank by Defendant Haydock and vegetation removed in the summer of 2010 without the legally required filing a Notice of Intent. See, Enforcement Order issued by the Dartmouth Conservation Commission dated March 24, 2011, requiring the filing of a Notice of Intent for full restoration attached hereto and incorporated herein by reference as Exhibit N, and photographs of the stair system that was the subject of the Conservation Commission's Enforcement Order against the owners of the Haydock Family Property, including Defendant Haydock, attached hereto and incorporated herein by reference as Exhibit O.

30.    Defendant Haydock's destruction of the Coastal Bank occurred at approximately the same time as he and Defendant Moss were using the same Coastal Bank in their attempts to stop the Reichenbachs' home from being built. In the process of constructing the stair system in the Coastal Bank, Defendants trespassed on the Reichenbach Property and damaged their vegetation. To this date, Defendant Haydock and his siblings have not complied with the Order of Conditions. Neither the Order of Conditions nor a Certificate of Compliance have been filed or recorded, as required by law. The Coastal Bank has not been restored. (See, Photographs taken on September 29, 2015, attached hereto and incorporated herein by reference as Exhibit P.)

31.    On February 24, 2011, Defendant Haydock appealed the issuance of the Building Permit for the construction of the retaining wall to the Dartmouth Zoning Board of Appeals.

10

PDF created with pdfFactory trial version www.pdffactory.com

32.   In February 2011, Defendant Moss told Mr. Reichenbach, *inter alia*, that the development was "too much for this community;" that the swimming pool was a hazard to Buzzards Bay and the Coastal Bank; and that she had spent thousands of hours on this project "without being paid". Mr. Reichenbach understood the reference to "without being paid" as an offer to withdraw her opposition in exchange for money, especially since she had repeatedly asked to be the Reichenbachs' interior decorator, which requests the Reichenbachs repeatedly refused. At about the same time, Defendant Haydock also made the statement that he would not like the view of the Reichenbachs' new home from his boat.

33.   On March 24, 2011, the MassDEP issued a Superseding Amended Order of Conditions - Affirmation in the Reichenbachs' favor on the First DEP Appeal. See, Superseding Amended Order of Conditions dated March 24, 2011 attached hereto and incorporated herein as Exhibit Q.

34.   In the late winter or early spring of 2011, at the request of the Reichenbachs, their land surveyor, Thomas W. Hardman, installed wooden stakes along the boundary lines of the Reichenbach Property. On information and belief, the Defendants removed the wooden stakes along the boundary line between the Reichenbach Property and the Haydock Family Property shortly after they were installed. This process of installation and removal occurred several times. The Reichenbachs then had Mr. Hardman install ten concrete boundary posts at the cost of $400 each. None of the remaining wooden stakes were removed after the concrete posts were installed.

35.   After the wooden stakes were installed, the Defendants installed their own metal stakes in the middle of the Ocean Access Easement along the boundary line between the Reichenbach Property and the Haydock Family Property and attached a line of rope along each stake. See, Photographs of the stakes and rope attached hereto and incorporated herein by reference as Exhibit R. A copy of said ocean access easement is attached

11

PDF created with pdfFactory trial version www.pdffactory.com

hereto and incorporated by reference as Exhibit S. By installing the stakes and ropes, the Defendants effectively forced anyone who has the right to use the Ocean Access Easement to use only the five feet on the Reichenbach Property.

36.     On April 7, 2011, Defendant Haydock and others filed a Notice of Claim for Adjudicatory Hearing appealing the issuance of the Superseding Amended Order of Conditions on March 24, 2011. See, Notice of Claim attached hereto and incorporated herein by reference as Exhibit T. Said appeal by Defendants was devoid of any reasonable factual support or any arguable basis in law.

37.     As part of the home construction project, Oliver Tree Service was hired by the Reichenbachs' landscape designer, Nan Sinton, to remove several trees on the Reichenbach Property. On April 14, 2011, Oliver Tree Service had left a vehicle parked outside the Reichenbach Property on Mattarest Lane with the prior permission of Defendant Moss for whom Oliver had done other work. The truck was not blocking access to any of the properties on Mattarest Lane. Defendant Haydock called Mr. Oliver on the telephone late at night to complain about the Oliver truck. Nan Sinton agreed to meet with Defendant Haydock and Mr. Oliver at 6:00 a.m. on April 15, 2011 at Mattarest Lane. Prior to the meeting, Defendant Haydock blocked Mattarest Lane with his vehicle, thereby preventing the Oliver truck from leaving Mattarest Lane. (See, Email of Nan Sinton of 4/25/2011 together with photographs attached thereto and incorporated herein by reference as Exhibit U.) During the meeting, Defendants Haydock and Moss verbally abused Oliver about the truck.

38.     On April 26, 2011, the Dartmouth Zoning Board of Appeals unanimously voted to uphold the Director of Inspectional Services' issuance of the building permit to construct the retaining wall. See, Zoning Board of Appeals Decision dated April 26, 2011, a copy of which is attached hereto and incorporated herein by reference as Exhibit V. Said Appeal by Defendants was devoid of any reasonable factual support and/or any arguable

12

PDF created with pdfFactory trial version www.pdffactory.com

basis in law.

39.   Work on the retaining wall began in September 2011, after the Decision of the Zoning
      Board of Appeals in favor of the Reichenbachs became final.

40.   From the beginning of the project, the Reichenbach Property was surrounded by a
      security fence. Also, from the beginning of the project to the end, there were "NO
      TRESPASS", "PRIVATE PROPERTY – DO NOT ENTER" and "DANGER –
      CONSTRUCTION SITE – DO NOT GO BEYOND THIS FENCE" signs in place on the
      fence in various prominent locations. Defendant Moss was repeatedly denied access to
      the work area on the Reichenbach Property. See, photographs of the fence and signs
      attached hereto and incorporated herein by reference as Exhibit W.

41.   During the construction of the retaining walls, Defendant Moss made a practice of
      standing on the Sullivan property along the south side of the Reichenbach Property, often
      all day long, interrogating the workers, taking pictures, and offering her opinion that they
      were doing the work incorrectly or illegally. Defendant Moss threatened workers that
      they would be in trouble for doing their jobs. See, Photographs attached hereto and
      incorporated herein as Exhibit X. Neither Defendants Haydock nor Moss had a legal
      interest in the Sullivan Property.

42.   Much of Defendants' abusive behavior related to the alleged blocking of access to the
      Haydock Family Property. The driveway to the Haydock Family Property is on the north
      side of the circle in Mattarest Lane. Access to the Haydock Family Property does not go
      through the circle. Further, construction workers sometimes parked on the south side of
      the circle which did not block access to the Haydock Family Property. No one occupied
      the Haydock Family Property during the construction process because it was used in the
      summer and construction was not allowed during the summer months in Nonquitt, except
      for painting and light interior work. Even if a vehicle parked in the road to the Haydock

13

Family Property, it would not have interfered with anyone as no one occupied the Haydock Family Property at that time. The Reichenbachs had and have a legal interest in that land on which the circle and road are located. The only purpose for the Defendants' difficult and abusive behavior regarding access was to harass the Reichenbachs' contractors, employees, and the Reichenbachs through them. There was always access for fire and emergency vehicles. They did not need to pass through the Mattarest Lane Circle to access the Haydock Family Property. (See photograph attached hereto and incorporated herein by reference as Exhibit Y.)

43.     On or about April 25, 2011, Defendants Haydock and Moss filed a Petition with the Dartmouth Conservation Commission to revoke the Original Order of Conditions issued on April 29, 2010.   The Petition was the fourth time Haydock and Moss objected to Plaintiffs' plans on the grounds that the Coastal Bank was incorrectly delineated. The Reichenbachs established that there was no error in the delineation of the Coastal Bank as alleged and that the Commission's Original Order of Conditions was binding for a three-year period absent a showing by the Defendants of fraud or a mutual mistake, which Defendants repeatedly failed even to attempt to do.   The Dartmouth Conservation Commission summarily dismissed the Defendants Petition.   See, Reichenbach's Opposition to Petition attached hereto and incorporated herein by reference as Exhibit Z, and the Minutes of the Dartmouth Conservation Commission meeting held on May 20, 2011 at which the Board voted against revoking the Original Order of Conditions attached hereto and incorporated herein by reference as Exhibit AA.   Defendant's Petition to Revoke the Original Order of Conditions was devoid of any reasonable factual support or any arguable basis in law.

44.     Prior to September, 2011, the Defendants prevailed upon the Dartmouth Board of Health to turn the Reichenbachs' new septic system approval process into a full Board meeting with opportunity for public participation.   The septic system approval process in Dartmouth for new construction is normally an administrative matter to which abutters

14

and others are neither noticed nor invited to comment or object. At that meeting, the Defendants alleged there was too much ledge in the area and that the submitted percolation tests were incorrectly performed. The Reichenbachs had further percolation tests performed which results were identical to the previous results, which tests were witnessed by Board of Health staff in both instances.

45.   Notwithstanding the facts that the original septic system designed for the Reichenbach Property did not require a waiver or variance and complied with all applicable local and state regulations, Defendant Haydock and a professional he retained filed written objections to the approval of the design.

46.   The Board found that the system was designed in full compliance with state and local regulations and unanimously approved the Reichenbachs' septic system. (See, Copy of Board of Health Decision attached hereto and incorporated herein as Exhibit BB.) The Defendants' opposition to the septic system was devoid of any reasonable factual support or any arguable basis in law.

47.   On September 21, 2011, the Defendants demanded that the Director of Inspectional Services and Christopher Michaud, the Health and Sanitary Inspector for the Town of Dartmouth, require the Reichenbachs to get a soil removal permit which to date Dartmouth had only required for gravel pit operations. This demand was rejected by the Town authorities.

48.   On October 2, 2011, heavy rains and winds probably caused a small section of the security construction fence along the southern boundary between the Reichenbach and Sullivan properties to bend over in a southerly direction. The Reichenbachs had installed the security fence to prevent trespass onto their property and to prevent any accidental trespassing onto the Sullivan Property by construction workers. This land was not adjacent or even close to the Haydock Property or the Haydock Family Property. The

15

PDF created with pdfFactory trial version www.pdffactory.com

Haydock Family Property is on the Reichenbachs' northerly boundary. Upon arrival for work that day, Reichenbachs' contractor's employees noticed the leaning fence. Without leaving the Reichenbach Property, the construction crew attempted to pull the fence upright. Defendant Moss insisted they not touch it and that they were trespassing on Sullivan's property. Defendant Moss has no ownership interest in the Sullivan Property or the fence. She "ordered" them to stop the process of correcting the angle of the fence.

49.    That morning, Defendant Moss called Michael O'Reilly, the Dartmouth Conservation Commission's Environmental Affairs Coordinator to protest the work. Mr. O'Reilly came to the Reichenbach Property to inspect the situation and declared that "everything was fine" and there was no trespass. Defendant Moss also called and complained to Lars Olson, the principal of the Reichenbachs' construction manager, Lars V. Olson Fine Home Building, Inc. (hereinafter referred to as "Olson"). Defendant Moss spent the entire day on the Sullivan property line taking pictures and directing workers to stop all work, and to stop repairing the fence. Defendant Haydock wrote a letter to the Conservation Commission asking for a stop work order. Haydock complained and asked for compensation for damages to vegetation on the Sullivan Property which he did not own. This fence repair did not involve the Haydock Property or the Haydock Family Property. The Director of Inspectional Services also visited the site and confirmed that proper procedures were being employed and that the retaining wall was being installed correctly.

50.    On October 4, 2011, Defendant Moss called Richard Keller, P.E., Senior Environmental Analyst at the MassDEP Southeast Regional Office, and complained about "blatant destruction of coastal banks." Mr. Keller asked Mr. O'Reilly to inspect the property. Mr. O'Reilly confirmed that the work was in compliance with regulations after an inspection. When Mr. Keller told Defendant Moss that compliance was confirmed by the Dartmouth Conservation Commission, she said to Mr. Keller that she was going to "call her Congressman" to force MassDEP to stop the "blatant destruction of coastal banks." This

16

PDF created with pdfFactory trial version www.pdffactory.com

complaint by Defendant Moss was after the Defendants had caused very serious permanent destruction of this same Coastal Bank during the Summer of 2010. The Defendants' concern about the Coastal Bank was a disingenuous tactic in their overall strategy to stop or delay the Reichenbachs' home from being built. See, Email from Rebecca Cutting, Senior Counsel/Litigation of the MassDEP, dated October 5, 2011, attached hereto and incorporated herein by reference as Exhibit CC.

51.    After a lengthy adjudicatory proceeding, on October 20, 2011, the Presiding Officer issued a Recommended Final Decision, adopted by the MassDEP Commissioner as the Final Decision on November 2, 2011, affirming the Superseding Amended Order of Conditions in favor of the Reichenbachs and rejecting all of the Defendants' claims. The Defendants, as in their unsuccessful April 25, 2011 petition to the Conservation Commission to revoke the Original Order of Conditions adopting the delineation of the Coastal Bank (described in Paragraph 43 above), failed in another collateral attack on an unappealed Order of Conditions as a matter of law. The claim that a new Notice of Intent was required instead of an Amended Order of Conditions was denied as "lacking sufficient evidentiary bases." The Presiding Officer ruled that the Defendants "failed to meet their burden of going forward, warranting the allowance of MassDEP's motion for directed verdict." The claim that the work would affect the stability of the Coastal Bank or affect the interests of flood control and storm damage prevention for work in Land Subject to Coastal Storm Flowage "warranted denial under a directed decision because the Defendants failed to provide evidence from a credible source and failed to provide competent evidence as its witnesses' testimony consisted of factually unsupported opinions and speculation." See, Recommended Final Decision and Final Decision attached hereto and incorporated herein by reference as Exhibit DD. The Decisions are evidence that the First DEP Appeal was devoid of any reasonable factual support or any arguable basis in law.

52.    On a Saturday morning in the late winter or early spring of 2012 Dana Diggle, a driver

17

PDF created with pdfFactory trial version www.pdffactory.com

for Puntes Excavating, came to the Reichenbachs' property at 12 Mattarest Lane to remove a piece of equipment. Defendant Haydock blocked his path with his pickup truck. Defendant Haydock got out of his vehicle and lectured Mr. Diggle for approximately 20 minutes, complaining about Mr. Diggle's employers. Defendant Haydock prevented him from leaving and from doing his job. Mr. Diggle also repeatedly told Defendant Haydock that if he would move his vehicle, he would be on his way.

53.   In March and April 2013, Defendant Moss complained to the Dartmouth Conservation Commission that the Reichenbachs had cut down without any permits their own trees on the Reichenbach Property. Mr. O'Reilly conducted a site visit and in an April 16, 2012 email to Defendant Moss explained that the cutting of the trees in question was allowed. (See, Email of Michael O'Reilly to Barbara Moss dated April 16, 2012, attached hereto and incorporated herein by reference as Exhibit EE.)

54.   On or about May 2, 2013, Defendants Haydock and Moss began to store their garbage cans and recycling bins on the property line between the Haydock Family Property and the Reichenbach Property close to and within plain view of the Reichenbach home and all who lived in or visited the Reichenbach home. Prior thereto, the Defendants stored their garbage out of sight either adjacent to or in the Haydock Family Property garage. The garbage cans and recycling bins were and are moved back to the Haydock Family Property house where they can be more easily used, only when someone is in residence there. As recently as September 29, 2015, Defendants placed their trash containers partly on Plaintiffs' property at the boundary line. See, Photograph attached hereto and incorporated herein by reference as Exhibit FF.

55.   On or about May 3, 2013, Defendant Haydock confronted Olson, coming onto the Reichenbach Property, yelling and swearing in front of several other workers about a vehicle parked on Mattarest Lane.

18

PDF created with pdfFactory trial version www.pdffactory.com

56.   On May 3, 2013, Defendant Moss used her body to stop an L&S Industries concrete mixer truck from delivering to the construction site on the Reichenbach Property.

57.   In June 2013, the Defendants engaged in a campaign of personal visits and complaints to the Dartmouth Conservation Commission about work at the Reichenbach Property not shown in detail on their Application for an Amended Order of Conditions. In an attempt to curtail the complaints and resolve the allegations with finality, the Commission required the Reichenbachs to file a Request for Determination of Applicability relating to work done at the Reichenbach home to decide whether a new Notice of Intent was needed. The work items were minor in nature, were considered "field adjustments," which would be reported to the Conservation Commission when applying for a Certificate of Compliance at the conclusion of construction, as is the custom and practice in the industry. A copy of the Request for Determination of Applicability is attached hereto and incorporated hereby by reference as Exhibit GG.

58.   On July 31, 2013, by unanimous vote, the Dartmouth Conservation Commission issued a Negative Determination of Applicability ("DOA") concluding that the field work performed was part of and allowed under the Original and Superseding Amended Orders of Conditions and did not require the filing of a new Notice of Intent, as was demanded by Defendants. See copy of the July 13, 2013 Decision attached hereto and incorporated herein by reference as Exhibit HH.

59.   On August 11, 2013, Defendant Haydock filed a Request for a Superseding DOA with the MassDEP (the "Second DEP Appeal"). The Defendant did not appeal the DOA under the local Wetlands Protection Bylaw to the Superior Court. Defendant Moss acted as Defendant Haydock's representative and sole witness.

60.   On October 2, 2013, MassDEP conducted a meeting on the Reichenbach Property as part of its evaluation of Defendant Haydock's appeal of the Negative DOA. During the

19

PDF created with pdfFactory trial version www.pdffactory.com

meeting, Defendant Moss stated that she herself had performed a test pit on the Haydock Family Property immediately adjacent to the Reichenbach Property to attempt to demonstrate that a dry well approved and installed on the Reichenbach Property was installed in groundwater. Defendant Moss is not an approved soil evaluator under the MassDEP regulations. On information and belief, Defendants Haydock and Moss never caused a test pit to be dug at the location at that time or any time prior thereto. The Defendants did not produce any data. This false testimony was intended to halt or further delay the construction of the Reichenbach home.

61.     On October 18, 2013, Defendant Moss wrote to MassDEP alleging that a grate for the catch basin that was installed in the driveway of the Reichenbach Property was supposed to be a 24 inch square and was only a 12 inch square "at best." The Reichenbachs' land surveyor, Thomas W. Hardman, measured and confirmed that the grate was a 24 inch square. The catch basin is located on the Reichenbach Property out of the Conservation Commission's jurisdiction.

62.     In late October 2013, for two hours, Defendant Moss stopped Nstar workers from installing an essential electric transformer on the Reichenbach Property until a supervisor came to the site to listen to her challenge. She confronted the NStar supervisor, but he refused her stop work demand.

63.     On December 12, 2013, MassDEP issued a Superseding Negative DOA affirming the DOA by the Conservation Commission in favor of the Reichenbachs. See, Superseding Determination of Applicability issued by Tena Davies of the MassDEP - Southeast Regional Office dated December 13, 2013, attached hereto and incorporated herein by reference as Exhibit 11.

64.     On January 2, 2014, Defendant Haydock filed a Notice of Claim for Adjudicatory Hearing appealing the December 12, 2013 Superseding DOA. See Notice of Claim

20

attached hereto and incorporated herein by reference as Exhibit JJ. The appeal was filed by Defendant Haydock. Defendant Moss filed an appearance in this matter and acted as Defendant Haydock's representative.    She is not an attorney.    Nor is she an environmental professional.

65.    After a pre-hearing telephone conference held on February 6, 2014 with the MassDEP Presiding Officer, the Presiding Officer concluded that only two issues were properly before the DEP for adjudication: (1) whether the DEP properly determined that the proposed work for the installation of the irrigation pump chamber would not fill, remove, dredge or alter land subject to coastal storm flowage and, therefore, no Notice of Intent was required, and (2) whether Haydock had standing.

66.    On February 19, 2014, Defendants Haydock and Moss were apprehended trespassing at night on the Reichenbach Property by a Nonquitt security guard. (See, Statement of John Honohan attached hereto and incorporated herein by reference as Exhibit KK. See Statement of Constable Richard Moniz attached hereto and incorporated herein by reference as Exhibit LL.) Also, see Photograph of area of trespass attached hereto and incorporated herein by reference as Exhibit MM. Defendant Moss trespassed upon the Reichenbach Property on multiple additional occasions.

67.    In April 2014, a Frades Disposal truck driver had mistakenly driven down the Haydock Family Property Driveway. As he attempted to leave the Haydock Family Property Driveway, Defendant Moss stood in front of his truck with outstretched arms preventing him from leaving. Andrew Dearden, an employee of Olson, was present and spoke with Defendant Moss, who continued yelling at him and at the truck driver. Defendant Moss called the police and would not let the truck leave until the police came and took a report.

68.    In the summer of 2014, Marc Leclair, who was a painter for Olson, was driving along Mattarest Lane to go to work at the Reichenbach Property. Defendant Haydock blocked

21

PDF created with pdfFactory trial version www.pdffactory.com

Leclair's car with his truck, preventing Leclair from going to work. Haydock told Leclair that Andrew Dearden "must be on drugs" and that Olson was "useless".

69.   During the summer of 2014, Defendants Haydock and Moss caused the Nonquitt Association to require the Reichenbachs to stop work during the summer months, even though the nature and extent of the work being performed at that time was permitted by the Nonquitt Association informal rules and regulations.

70.   After reviewing all the written pre-filed testimony and Motions for Directed Decision, in a Recommended Final Decision issued on June 20, 2014, the Presiding Officer held that Haydock did not present any credible evidence from a competent source and could imagine no evidence that could be presented that would show that the underground pump chamber in question could in any way affect wave action or the Coastal Bank. The Presiding Officer also ruled that Defendant Haydock had no legal standing in this matter because he did not provide factual support that he was aggrieved. See, Recommended Final Decision dated June 20, 2014, attached hereto and incorporated herein by reference as Exhibit NN. The Haydock Second DEP Appeal was devoid of any reasonable factual support or any arguable basis in law.

71.   On June 26, 2014, the MassDEP Commissioner issued a Final Decision adopting the Recommended Final Decision of the Presiding Officer. A copy of the Final Decision is attached hereto and incorporated herein by reference as Exhibit OO.

72.   On July 7, 2014, Defendant Haydock by Defendant Moss filed a Request for Reconsideration of the Final Decision, which was opposed by Mrs. Reichenbach and the MassDEP.

73.   On September 30, 2014, the Presiding Officer issued a Recommended Final Decision on Reconsideration. She recommended denial of the motion for reiterating arguments

22.

PDF created with pdfFactory trial version www.pdffactory.com

covered in the Final Decision, and addressed and rejected other "non-compliant" issues alleged by Defendant Haydock. A copy of the Recommended Final Decision on Reconsideration is attached hereto and incorporated herein by reference as Exhibit PP.

74.   The Request for Reconsideration was yet another attempt to frustrate and impose additional costs on the Reichenbach home building project and interfered with the Reichenbachs' right to use, improve and enjoy their property. Defendant Haydock's Request for Reconsideration was devoid of any reasonable factual support or any arguable basis in law.

75.   On October 24, 2014, Andrew Dearden, an employee of Olson, was abused by Defendant Haydock who was screaming, yelling and swearing at him and accusing somebody of having broken a tree branch, which in fact came down in a violent storm the preceding evening.

76.   On October 28, 2014, David W. Cash, Commissioner of the Boston Office of Appeals and Dispute Resolution of the DEP issued a final Decision denying Haydock's Request for Reconsideration of the DEP's June 26, 2014 Final Decision. See, DEP Denial attached hereto and incorporated herein by reference as Exhibit QQ. The Request for Reconsideration was yet another attempt to frustrate and impose additional costs on the Reichenbach home building project and interfered with the Reichenbachs' right to use, improve and enjoy their property. Haydock's Request for Reconsideration was devoid of any reasonable factual support or any arguable basis in law.

77.   On November 11, 2014, Defendant Haydock filed a pro se Complaint with the Bristol County Superior Court appealing the MassDEP Commissioner's Final Decision on the Superseding DOA. See, Copy of Complaint filed by Haydock attached hereto and incorporated herein by reference as Exhibit RR. This Superior Court appeal was and is devoid of any reasonable factual support or any arguable basis in law. It constitutes yet

23

PDF created with pdfFactory trial version www.pdffactory.com

another attempt to intimidate, threaten or coerce the Reichenbachs so that they cannot improve, use or enjoy their Property and to impose costs on the Reichenbach home building project.

78.    On January 28, 2015, after a large evening snow storm, an employee of Olson noticed footprints going between the Haydock Family Property onto the Reichenbach Property and back. (See, photographs attached hereto and incorporated herein by reference as Exhibit SS.) No one was living at the Haydock Family Property at the time, but Defendants Haydock and Moss were caring for the Haydock Family Property at the time. Nonquitt is a gated community. The Reichenbach and Haydock Properties are two miles from the entrance gate on Smith Neck Road. Very few people live in Nonquitt in the winter months.

79.    Throughout the entire project, Defendant Moss was a constant presence and would lurk on the property lines separating the Haydock Family Property and the Reichenbach Property and Sullivan Property/Reichenbach Properties taking photographs and/or videos, talking on the phone, demanding information of workers and town employees on site, telling the workers they were acting illegally, ordering them to stop work and casting insults about their employers or co-workers. Defendant Moss created a hostile work environment for project workers and town employees and made them extremely uneasy, demeaned them and made to feel as though their privacy was invaded. Her behavior caused substantial delays in the performance of their work. Her behavior caused strains in the relations between Olson and some of his employees and subcontractors' employees.

80.    Matt Swimm, an employee of Olson, was uncomfortable with the constant presence of Moss and by the Defendants' behaviors. The constant questioning by Defendant Moss took Mr. Swimm from his duties and he would fall behind and feel pressured that he was not getting his work done. Defendant Moss would repeatedly come onto the Reichenbach Property to lodge complaints to or ask questions of Mr. Swimm. Mr. Swimm would ask

24

PDF created with pdfFactory trial version www.pdffactory.com

her to leave because she was not allowed on the Reichenbach Property. The behavior of the Defendants which created the uncomfortable work conditions was a contributing factor when Mr. Swinn sought and obtained employment elsewhere.

81.   In April of 2014, Andrew Dearden was driving into work. As he was coming around the bend on Mattarest Lane, Defendants Haydock and Moss were walking in the road. Mr. Dearden slowed down. The Defendants Haydock and Moss stood in the middle of the road and stopped Mr. Dearden from continuing. Both Defendants yelled at him stating that this was "their road" and that he was going too fast.

82.   The Reichenbachs received approvals in the Original Order of Conditions and the Superseding Amended Order of Conditions to conduct minor regrading, filling and sodding work along the northern foundation. This work was completed to an approved elevation in 2014. On February 27, 2014, the Reichenbachs filed an Application for a Letter of Map Revision ("LOMR") with the Federal Emergency Management Agency ("FEMA") to incorporate the finished elevation into a revised floodplain map. Without notice to the Reichenbachs, the Defendants repeatedly interfered with and delayed FEMA from issuing the LOMR to the Reichenbachs. The LOMR procedure is an engineering review process in which the Defendants had no legal standing to participate. In the communications with FEMA, its review engineer, and the local Environmental Affairs Coordinator and the Director of Inspectional Services, the Defendants made false factual allegations and assertions that unreasonably delayed the LOMR review process. According to FEMA, the normal processing time for a LOMR is four to six weeks. Ten months after the application, on December 9, 2014, FEMA issued a LOMR to the Reichenbachs. The Defendants communications with FEMA and others were devoid of any reasonable factual support or any arguable basis in law and were intended to interfere with the Reichenbachs' rights to develop and enjoy their property.

83.   The Reichenbachs received a temporary Certificate of Occupancy on January 22, 2014

25

PDF created with pdfFactory trial version www.pdffactory.com

and a final Certificate of Occupancy on June 6, 2014.

## COUNT I

## CIVIL RIGHTS

Violation of M.G.L., Chapter 12 section H and I and
Articles I, X and XII of the Massachusetts Declaration of Rights

84.  Plaintiffs repeat and reallege the averments stated in Paragraphs 1 through 83
hereinabove, as if fully set forth herein.

85.  Plaintiffs have the right to possess, build on, use and enjoy their real property guaranteed
to them as well as all Massachusetts citizens by Articles I, X and XII of the
Massachusetts Declaration of Rights and M.G.L. Chapter 12 Sections 11H and 11I.

86.  Defendants Haydock and Moss have violated the Reichenbachs' rights to build on, use
and enjoy their real property in violation of the laws cited above by:

A.  attempting to intimidate, threaten, abuse, harass and coerce the Reichenbachs,
their contractor, vendors and delivery personnel;

B.  executing as a joint venture a plan to make the Reichenbachs feel coerced,
uncomfortable and unwelcome, and to believe that they would always face hostile
actions which are expensive to defend against, such that they would abandon their
plan to build, use and enjoy their home on Mattarest Lane and to prevent the
Plaintiffs from enjoying their home and to cause them continual apprehension;
and

C.  instituting a succession of legal challenges to the Reichenbachs' home building
plans that were devoid of any reasonable factual support and/or any arguable basis

26

PDF created with pdfFactory trial version www.pdffactory.com

in law for the purpose of preventing and delaying the Reichenbachs' home building plans.

87.    Defendants' conduct has damaged the Reichenbachs by:

    A.    delaying their home building project thereby depriving them of the use and enjoyment of their home;

    B.    causing them to incur increased construction costs;

    C.    causing them mental anguish and apprehension; and

    D.    causing them to incur significant and otherwise unnecessary legal and engineering fees.

### COUNT II

### TRESPASS

88.    Plaintiffs repeat and reallege the averments stated in Paragraphs 1-12, 30, 34, 40, 61, 66, 78 and 80 hereinabove, as if fully set forth herein

89.    Defendants Haydock and Moss have trespassed on the Reichenbach Property and in so doing have caused the Reichenbachs mental anguish, apprehension and damage.

### COUNT III

### TORTIOUS INTERFERENCE WITH CONTRACTUAL ADVANTAGEOUS RELATIONSHIPS

90.    Plaintiffs repeat and reallege the averments stated in Paragraphs 1-12, 22, 27, 37, 41, 42, 43, 48, 49, 52, 55, 56, 61, 62, 67, 68, 69, 75, 79, 80 and 81 hereinabove, as if fully set forth herein.

27

PDF created with pdfFactory trial version www.pdffactory.com

91.   Plaintiffs had a contract and business relationship with Lars V. Olson Fine Home
      Building, Inc, a third party, for the construction of a new home on their property at 29
      Mattarest Lane, South Dartmouth, Massachusetts.

92.   The Defendants knew of this contractual relationship.

93.   The Defendants interfered with the relationship through improper motive and means, by:

      A.   their abuse of Lars Olson and his employees and contractors, suppliers and
           independent contractors to the project;
      B.   their harassment, false imprisonment, constant interruptions and surveillance of
           Lars Olson and his employees and contractors;
      C.   trespassing on the Reichenbach Property; and
      D.   through their ill will demonstrated by threats, statements and actions of the
           Defendants.

94.   The Plaintiffs suffered economic harm as a direct result of the Defendants' conduct,
      including without limitation demonstrated by:

      A.   significant delays in the project;
      B.   additional work hours and expenses incurred by Lars Olson and his employees
           and associates spent dealing with the Defendants; and
      C.   significant additional costs to the project.

**WHEREFORE**, Plaintiffs hereby request that this Court:

      A.   Award judgment to the Plaintiffs against Defendants, jointly and severally, on all
           counts of their Complaint in amounts which this Court feels just and proper.

                                        28

B.    Enter judgment to the Plaintiffs against Defendants, jointly and severally, for such amount to be determined for:

        (1)    legal, engineering, and construction costs incurred as a result of Defendants' wrongful conduct;

        (2)    loss of use and enjoyment of their home; and

        (3)    compensation for the mental anguish and apprehension Defendants have caused Mr. Reichenbach and Mrs. Reichenbach.

C.    Enter Judgment to the Plaintiffs against Defendants, jointly and severally, for damages resulting from Defendants' trespass on Plaintiffs' property, including security expenses and compensation for mental distress and apprehension.

D.    Judgment for damages sustained as a result of Defendants' interference with Plaintiffs' contractual relations with Lars V. Olson Fine Home Builders.

E.    Award Plaintiffs their costs and attorneys' fees incurred in bringing and prosecuting this action.

F.    Issue a permanent injunction ordering the Defendants to refrain from:

        i.    Continuing to violate the Reichenbachs' civil rights;

        ii.    Trespassing on the Reichenbachs' Property;

        iii.    Harassing Plaintiffs, their family members, guests, employees, independent contractors and delivery people regarding access and parking, except when someone is interfering with direct access to the property in which they reside or own;

        iv.    Restraining the liberty and free movement of persons; and

        v.    Crossing over the beach on the Reichenbach Property.

G.    Grant Plaintiffs a real estate attachment on the Haydock Property to secure the Judgment awarded.

H.    Grant such other relief, including equitable relief, as the Court deems just and proper.

29

PDF created with pdfFactory trial version www.pdffactory.com

PLAINTIFF claims trial by jury on all issues so triable.

Plaintiffs, John Reichenbach and
Margaret Reichenbach

By their attorneys

Robert B. Feingold & Associates, P.C.

By: _____
Robert B. Feingold, Esq BBO#161520
700 Pleasant Street, Suite 520
New Bedford, MA 02740
Tel. No. 508-999-1119
Email: bfeingold@rbflaw.net

Dated:  October 1, 2015

30

This Complaint alleges violations of the Massachusetts Civil Rights Act, M.G.L. c. 12, Section 11H and violations of Articles I, X and XII of the Massachusetts Declaration of Rights, trespass, and tortious interference with contractual/advantageous relationships. Plaintiffs Margaret J. Reichenbach and her husband, John Reichenbach, allege that Defendants Timothy G. Haydock and Barbara Moss have by threats, intimidation and coercion interfered with the Reichenbachs' right to use, improve and enjoy their land and new home. The Defendants have undertaken a relentless campaign to hinder and/or delay the Plaintiffs from building a new home on their land. Defendants have threatened to damage their reputation and finances; trespassed; barred the Plaintiffs from using the only existing access to their property; attempted to prevent them from constructing an alternate access; falsely imprisoned Plaintiffs' vendors and contractors; engaged in abusive conduct and language directed toward contractors and others working at the site; monitored the Plaintiffs' Property with cameras; interrupted construction by talking at and to workers; attempted to force the Town of Dartmouth to require Plaintiffs to obtain a soil removal permit which is only required of gravel pits; interfered in the Plaintiffs' FEMA LOMR process; and have commenced and maintained a constant stream of legal challenges which lacked any reasonable factual support and/or any arguable basis in law. The damages under Count I – Civil Rights Claim exceed $1,500,000. Damages under Count II Trespass including the psychological harm cause exceed $500,000. the damages under Count III Interfering with Contractual Relations exceed $100,000.